IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHUCK BALDWIN, DARRELL R. CASTLE, WESLEY THOMPSON, JAMES E. PANYARD, and the CONSTITUTION PARTY OF PENNSYLVANIA,<br>          Plaintiffs<br><br>    v.<br><br>PEDRO A. CORTES, Secretary of the Commonwealth of Pennsylvania,<br>          Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:  CIVIL ACTION NO. 1:08-cv-01626<br>:<br>:  (Chief Judge Kane)<br>:<br>:<br>:<br>: |

## MEMORANDUM AND ORDER

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

On August 29, 2008, Plaintiffs brought this action for declaratory and injunctive relief. (Doc. No. 1.) Plaintiffs are the Constitution Party of Pennsylvania; Chuck Baldwin, a candidate for President; Darrell R. Castle, a candidate for Vice President; and Wesley Thompson and James E. Panyard, members of the Constitution Party of Pennsylvania. Pedro Cortes is the Secretary of the Commonwealth ("Secretary"), charged by statute with the administration of the state election laws.

On September 9, 2008, Plaintiffs filed a motion for an expedited hearing on Plaintiffs' motion for a preliminary injunction. (Doc. No. 6.) A hearing was held on the merits of the motion on September 10, 2008, and thereafter Defendant was ordered to submit a supplemental affidavit. (Doc. No. 11.) At the hearing, the parties declined to offer testimony, relying instead on affidavits and representations to the Court that no material facts are in dispute that bear on Plaintiffs' legal claim for declaratory and injunctive relief.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY:**

Plaintiff Constitution Party of Pennsylvania is a minor political body within the meaning of the Pennsylvania Election Code. 25 P.S. § 2601 et seq. As such, the party and its candidates are subject to specialized procedures that govern whether and when they are permitted a place on the ballot. These procedures were previously challenged by Plaintiffs in separate litigation and the procedures were upheld as constitutional. See Rogers v. Corbett, 468 F.3d 188 (2006). The Pennsylvania Election Code provides that candidates from minor political parties or political bodies, such as Plaintiffs, earn their way on the ballot through the collection of signatures submitted to the Secretary in the form of "nomination papers." The Election Code provides that the last date for the submission of nomination papers is the "second Friday subsequent to the primary." 25 P.S. § 2913(c). The parties agree that in 2008, May 2 is the second Friday subsequent to the primary.

The parties agree that since 1984, the Secretary of the Commonwealth has deviated from the Election Code by extending the date for nomination papers for minor political parties and bodies to August 1. August 1 is the date dictated by consent decrees (Def.'s Exs. 2 & 3) in cases captioned Libertarian Party of Pennsylvania v. Davis, 84-0262 (M.D. Pa. 1984), and Hall v. Davis, 84-1057 (E.D. Pa. 1984). Both decrees provide that the Secretary of the Commonwealth will "accept the nomination papers of plaintiffs [the Libertarian Party of Pennsylvania et al.] filed on or before August 1 of this year and future election year, [sic] notwithstanding Section 2913(c) of the Election Code . . . terminat[ing] upon amendment of Section 2913(c) of the Election Code of the General Assembly." (Def.'s Ex. 2.)

The identity of all of the parties to the consent decree and details concerning the

particulars of the cause of action are not part of the record here, but the parties to this litigation suggest that the litigation involved a constitutional challenge to the deadline contained in 25 P.S. § 2913(c). The parties agree that no legislative action has since occurred, and that, since 1984, the August 1 deadline has been the one enforced by the Secretary and included in the Department of State's calendar of election deadlines. (Def.'s Ex. 1.) The parties also agree that the August 1 deadline has been enforced not only with regard to the Libertarian Party, but as to all minor political parties and political bodies.

Consistent with the August 1 deadline, Plaintiffs Baldwin and Castle submitted their nomination papers containing 21,957 signatures to the Defendant on that date. The Defendant rejected the petitions (Pl.'s Ex. A), informing Plaintiffs that the number of signatures presented was inadequate to satisfy the 24,666 required.[1] Plaintiffs continued to circulate petitions.

On August 26, 2008, Plaintiffs Baldwin and Castle again submitted their nomination petitions, now with an additional 8000 signatures. Their applications were rejected as untimely. To date, the Secretary has not accepted Plaintiffs' nomination papers, and Plaintiffs' signatures have not been verified by the Defendant. Thus, Plaintiffs Baldwin's and Castle's names were not supplied by Secretary Cortes to the counties for inclusion on the November ballot.

Plaintiffs seek an injunction declaring the August 1 deadline invalid and an order directing the Secretary to certify Baldwin's and Castle's names for inclusion on the November ballot for President and Vice President of the United States. For the reasons that follow,

---

[1] Under Pennsylvania law, a political body can only gain access to the ballot upon submission of nominating signatures "at least equal to two per centum of the largest votes cast . . . for any officer elected in the last preceding election." 25 P.S. § 2911. Recently challenged and upheld, this ballot access method results in a fluctuating number, usually resulting in a requirement of 30,000 to 50,000 signatures. Rogers v. Corbett, 468 F.3d 188 (3d Cir. 2006).

Plaintiffs' request for injunctive relief must be denied.

**DISCUSSION:**

It is well established that a grant of injunctive relief under Federal Rule of Civil Procedure 65(a) "is an extraordinary remedy, which should be granted only in limited circumstances." <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 800 (3d Cir. 1989) (citations omitted). The moving party bears the burden of establishing that the requested injunctive relief is warranted. <u>Id</u>. In determining whether to grant emergency injunctive relief, the Court must consider the following four factors: (1) the likelihood that the applicant will prevail on the merits of the substantive claim; (2) the extent to which the moving party will be irreparably harmed in the absence of injunctive relief; (3) the extent to which the non-moving party will suffer irreparable harm if the Court grants the requested injunctive relief; and (4) the public interest. <u>AT&T v. Winback & Conserve Program, Inc.</u>, 42 F.3d 1421, 1427 (3d Cir. 1994) (citations omitted). "A failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." <u>In re Arthur Treacher's Franchisee Litig.</u>, 689 F.2d 1137 (3d Cir. 1982).

Plaintiffs' challenge to the deadline for nomination petitions is framed as an Equal Protection and First Amendment challenge, and as a violation of Article II, Section 1 of the Constitution. Plaintiffs conceded at the hearing that "the only issue of real substance" is Plaintiffs' Article II, Section 1 challenge to the August 1 deadline. (Tr. at 3.) In Federal elections, Article II provides that:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole number of Senators and Representatives to which the State may be entitled in the

>Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. Const. art. II, § 1, cl. 2. Thus, the Constitution reserves to the state legislative body the power to provide a method for the selection of presidential electors. Relying on Bush v. Gore for the proposition that an election procedure that is a "significant departure" from the legislative scheme runs afoul of Article II, Section 1, Plaintiffs argue that the date cited by Secretary Cortes cannot be enforced. Bush v. Gore, 531 U.S. 98, 113 (2000) (Scalia, J., concurring) ("A significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question.")

In Bush, the Florida Supreme Court ordered manual recounts of ballots that, according to the machines, had failed to signify a legal vote for President. Bush, 531 U.S. at 102 (per curiam). A legal vote, as defined by the Florida Supreme Court, is "one in which there is a 'clear indication of the intent of the voter.'" Id. (citing Gore v. Harris, 772 So. 2d 1243, 1257 (Fla. 2000)). Thus, the Florida Supreme Court directed the recounters to discern voter intent from the dimpled chads and hanging chads, a process which resulted in disparity not only among counties, but even as between one recount team and another. Bush, 531 U.S. at 105-06. The United States Supreme Court found the recount mandate too imprecise to "comport[] with minimal constitutional standards" required by the Fourteenth Amendment Equal Protection Clause and the "one person, one vote" principle. Id. at 106-10.

The United States Supreme Court framed the Article II issue, but ruled on Equal Protection grounds without squarely addressing the question of whether the judicially mandated recount procedures violated Article II by compromising the legislative scheme. Id. at 105 ("It is

not necessary to decide whether the Florida Supreme Court had the authority under the legislative scheme for resolving election disputes to define what a legal vote is and to mandate a manual recount implementing that definition.").

In applying the analysis of the concurring Justices in Bush, at least one federal court has reviewed election directives issued by a Secretary of State, finding a dispositive Article II challenge. See Libertarian Party of Ohio v. Brunner, 2008 U.S. Dist. LEXIS 64375 (S.D. Oh. July 17, 2008); (Doc. No. 1-3, Ex. D.)  In Brunner, the United States District Court reviewed a directive from the Secretary of State that established procedures for ballot access by minor parties including signature requirements and deadlines. These requirements were implemented by the Secretary of State as a substitute for election laws stricken by the Court of Appeals for the Sixth Circuit.[2] The court found that the Secretary's directive imposed a non-legislative alternative to ballot access not contemplated by the Ohio legislature. Id. at 5; see also Libertarian Party of Ohio v. Blackwell, 462 F.3d 579 (6th Cir. 2006). Relying on Bush v. Gore and Article II, Section 1 of the Constitution, the district court found that the directive represented an unconstitutional usurpation of legislative power because it "establishe[d] a new structure for minor party ballot access, a structure not approved by the Ohio legislature." Brunner, 2008 U.S. Dist. LEXIS 64375, at *8.

The Brunner case is not sufficiently analogous to our facts, or sufficiently persuasive, to suggest that Plaintiffs are likely to achieve success on the merits in this case. As the court

---

[2] Prior to the Sixth Circuit opinion, Ohio law provided that a party could qualify for the general ballot only by: 1) receiving at least five percent of the overall vote for their Presidential or Gubernatorial candidate in the prior election, or 2) by submitting signatures in the amount of one percent of the votes cast for governor 120 days before the primary election, and then nominating a candidate at the primary election. (Doc. No. 1-3, Ex. D, at 3.)

remarked in Brunner,

> [T]he Directive issued by the Secretary of State does not interpret provisions of legislation or resolve factual disputes arising under Ohio law. Instead, the Directive establishes a new structure for minor party ballot access, a structure not approved by the Ohio legislature.

Brunner, 2008 U.S. Dist. LEXIS 64375, at 8. Similarly, Bush found fault primarily with the Florida Supreme Court's establishment of new standards that did not sufficiently assure equal protection of voters. Bush, 531 U.S. at 100, 104. The per curiam opinion framed the issue as "whether the Florida Supreme Court established *new* standards for resolving Presidential election contests, thereby violating Art. II, § 1, cl. 2." Id. at 100 (emphasis added). Neither court addressed the question Plaintiffs present: whether the duly authorized administrator of elections may adjust an election deadline within an intact legislatively-crafted scheme without violating Article II of the United States Constitution.

On this record, it is not clear to the Court that the extension of a legislatively created deadline to allow for greater ballot access by minor political parties and bodies represents such a fundamental departure from the legislative scheme as to offend Article II of the Constitution. At trial on the merits, Plaintiffs may establish that the August 1 date fundamentally impairs or changes the order of elections and access to the ballot so as to undermine a carefully crafted legislative scheme. On the limited record now before the Court, this Court cannot reach such a conclusion.

As Secretary Cortes notes, the "new" signature deadline is not a creation of the Secretary of the Commonwealth, but a court-ordered adjustment to the election calendar that has been part of the election process for over twenty years without prior contest by any political group or

amendment by the legislature.³ Moreover, as Secretary Cortes notes, the Court may conclude that the adjusted date represents a lawful exercise of the powers delegated to Secretary Cortes by the Pennsylvania General Assembly, and therefore no departure from the legislative scheme at all.

The Court cannot find that Plaintiffs have demonstrated a likelihood of success on the merits. It is not clear that Secretary Cortes' actions in adopting the August 1 date are in excess of powers delegated to him by the Pennsylvania General Assembly. Even assuming that the August 1 date represents an extra-legislative alteration to the Election Code, Plaintiffs have not established an Article II violation by demonstrating a significant departure from the legislative scheme.

Finding no likelihood of success on the merits, the Court need not address the remaining factors for injunctive relief except to note that the relief Plaintiffs seek will not prevent irreparable harm to Plaintiffs and will be contrary to the public interest. The harm to Plaintiffs is exclusion from the November ballot. Plaintiffs, in effect, urge the Court to find that only the legislature may modify the Election Code deadline. Such a finding requires the Court to strike the August 1 date and to reject Plaintiffs' request that the Court supply a new date that will permit Plaintiffs a place on the ballot. Were Plaintiffs to prevail, the August 1 deadline must be stricken and the statutory deadline of the "second Friday subsequent to the primary" – May 2, 2008 – acknowledged as the legal deadline for the filing of nomination papers.⁴ 25 P.S. § 2913.

---

³In Rogers v. Corbett, the Third Circuit Court of Appeals ruled on a challenge to the numerical signature requirement. 468 F.3d 188 (2006). In so doing, the Court noted the August 1 date as the deadline in the nomination process, although the constitutionality of the deadline was not before the court.

⁴Plaintiffs argue that the legislative deadline (25 P.S. § 2913) is likewise unconstitutional because such a holding is implicit in the existence of a consent decree. The Court finds this

Applying the May 2 date would not afford Plaintiffs the relief they seek, as Plaintiffs have, in failing to meet the August 1 date, failed to meet the earlier statutory date. As evidenced by the Affidavit of the Secretary, an order striking the August 1 date and substituting the May 2 statutory date would also call into question the eligibility of other candidates whose names have already been submitted to the counties for inclusion on the November ballot. Such a result threatens irreparable harm to these candidates and to the orderly progress of elections in Pennsylvania. The public interest would not be served by granting Plaintiffs the relief they seek.

**CONCLUSION:**

Plaintiffs have failed to establish a likelihood of success on the merits. As such, their motion for a preliminary injunction must be denied.

**NOW**, **THEREFORE, IT IS HEREBY ORDERED THAT** Plaintiffs' motion for preliminary injunction (Doc. No. 1) is **DENIED**.

    S/ *Yvette Kane*
    Yvette Kane
    Chief United States District Judge

---

argument to be without merit. A consent decree makes no findings of fact or law. <u>Harris v. City of Philadelphia</u>, 137 F.3d 209 (3d Cir. 1998) (defining a consent decree as a contractual compromise between parties to avoid risk of litigation and other factors). A consent decree is an agreement between parties and does not imply a court finding on its underlying facts. There are no facts before the Court that would support a finding that the May 2 deadline is constitutionally infirm, and Plaintiffs point to no case that has so held.